UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA ARCHER-GIFT,
Individually and on behalf of others similarly situated,

    Plaintiff,

v().    Case No. 15-14467

CITIGROUP, INC.,    HON. AVERN COHN
THE HOME DEPOT, INC., and
SEARS, ROEBUCK AND CO.,

    Defendants.

_____/

**DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (Doc. 34), and DENYING PLAINTIFF'S MOTION TO PERMIT DISCOVERY, (Doc. 38)[1]**

### I.    INTRODUCTION

#### A.    The Case

This is an Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, case. Plaintiff Cynthia Archer-Gift (Archer) seeks damages relating to the denial of her applications for credit at Defendants Sears, Roebuck and Co. (Sears) and The Home Depot, Inc. (Home Depot) stores.

The credit was in a credit card for Sears and a credit card for Home Depot. Archer says each card was valid only at stores affiliated with the brand company,

---

[1] Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

(Doc. 16 ¶¶ 14, 29). She says each card was operated as a joint venture with Defendant Citigroup, Inc. (Citigroup), who "administered" cards, (*Id.* ¶¶ 13-14, 28-29).

Archer says that she never received a written "adverse action" notice of the reason for the denial of credit from Sears or from Home Depot, and that the notice for Sears, in the form of a letter, was deficient based on its stated reason "Unable to comply with consumer statement."[2]

### B. Procedural History

Defendants have moved to dismiss, (Doc. 22), on the grounds that a letter from each company stating the reason for the denial of credit were sent to Archer by U.S. mail and were specific enough to satisfy the ECOA. In support, defendants attached a copy of each letter, (Docs. 22-2, 22-3).

In response, Archer reasserted that she never received either letter and the Sears letter's language lacked specificity. Archer said that each defendant has not established a letter was sent because each has not offered proof of mailing.

The Court denied defendants' motion to dismiss without prejudice, (Doc. 28). It reasoned:

> . . . There is a factual issue of whether Archer received an adverse action notice from Home Depot and the statement in the Sears notice "Unable to comply with consumer statement" lacks precision. . . .
>
> Defendants intend to file a motion for summary judgment within 21 days. Archer shall have 14 days to respond.

(*Id.* at 2). Also, the Court granted Archer time to conduct additional discovery relating to factual issues identified by the Court. (*See* Doc. 34-6 at 18-19).

---

[2] Archer does not explain how she became aware of the Sears letter's content given her statement that she did not receive a letter in the mail.

## C. Pending Motions

Defendants have filed a motion for summary judgment, (Doc. 34), stating there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.[3] In support, they attach employee declarations and business records of Citigroup.

Archer responds on the merits and asks the Court to defer ruling on the motion until she has had an opportunity to conduct additional discovery. She has filed a "Motion to Permit Discovery" in this regard under Fed. R. Civ. P. 56(d), (Doc. 38).

## D. Disposition

### 1. Summary Judgment

For the reasons elaborated below, Archer has failed to rebut the presumption based on defendants' proofs that she received each letter. Moreover, each letter's statement of the reason for the denial of credit pertaining to Archer's credit report was specific enough to meet the notice requirements of the ECOA. Defendants' motion for summary judgment, (Doc. 34), is GRANTED.[4]

### 2. Discovery

As discussed below, Archer has been afforded ample opportunity to conduct discovery in relation to the content and mailing of each letter. For this reason, her motion to permit additional discovery, (Doc. 38), is DENIED.

---

[3] Defendants also say that Home Depot and Sears each should be dismissed as a party as it was not a creditor or involved in the decision to deny Archer credit.

[4] Defendants say Archer lacks constitutional standing because she has failed to allege an injury-in-fact. The Court is satisfied that Archer has alleged an actual injury, in the form of a failure to receive a timely and sufficient notice stating the reason for the denial of credit under the ECOA. Thus, the Court has jurisdiction to rule on the merits.

3

## II. DISCUSSION

### A. Legal Standard

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." *Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

### B. Sears Stove

On July 5, 2013, Archer went to a Sears store to buy a stove. At the store, Archer filled out an application[5] for a Sears-branded credit card to help pay for the stove. After a store employee entered Archer's information into a computer system, the employee told Archer that she had been denied credit.

A letter dated July 6, 2013 listed the sender as "Sears Card" and gave the reason for denial of credit as "Unable to comply with consumer statement." (Doc. 22-3 at 2-3). The letter said the decision was based on information from Archer's credit report

---

[5] There is no copy of either application in the record, nor is there an explanation of whether the application was paper or electronic.

4

provided by Equifax Credit Information Service (Equifax), a credit reporting agency, and that she could obtain a free copy of the report from Equifax.

The letter listed Citibank, N.A. (Citibank), a subsidiary of Citigroup as the "creditor" for the card.

### C.     Home Depot Washing Machine

On February 11, 2014, Archer went to a Home Depot store to buy a washing machine. At the store, Archer filled out an application for a Home Depot-branded credit card to help buy the washing machine. After a store employee entered Archer's information into a computer system, the employee told Archer that she had been denied credit.

According to Archer, she received a letter from "Home Depot Credit Services" dated February 24, 2014 saying "the credit center was unable to complete processing of her application, and that she would receive a written notification within 7-10 days with the results of the credit review." (Doc. 16 ¶ 18).

A letter from Home Depot Credit Services dated February 27, 2014 gave the reason for denial of credit as "Unable to verify credit reference due to security alert." (Doc. 22-2 at 2). The letter stated the decision was based on information from Archer's credit report provided by Equifax, and that she could obtain a free copy of the report from Equifax.

The letter listed Citibank as the "creditor" for the card.

### D. Parties' Papers

#### 1. Summary Judgment

In substance, defendants' motion for summary judgment, (Doc. 34), is identical to their previously-denied motion to dismiss, (*see* Doc. 22).[6] Defendants, however, now attach two declarations from Citigroup employees and accompanying records as to the mailing and content of the letters for Sears and Home Depot. (Docs. 34-4, 34-5). Defendants say these documents establish that letters were sent by Citigroup to Archer, raising a rebuttable presumption that the letters were received.

#### 2. Citigroup Declarations

Each declarant says his statements are based on either personal knowledge or review of the relevant business records. (Doc. 34-4 at 3; Doc. 34-5 at 3).

##### a. Sears

As to the Sears letter, the declarant says that Citigroup "caused a letter to be mailed via first class U.S. Mail to [Archer] at [her address]" on July 6, 2013. (Doc. 34-4 at 5). The declarant says that Citigroup has a "custom and practice to send such letters by first class mail, postage prepaid." (*Id.*).

The declarant explains that Citigroup reviewed Archer's credit report and detected an "Extended Fraud Alert" placed on the file by Archer. (*Id.* at 4). When Archer was asked at Sears to verify her identity with a telephone number she had provided with the fraud alert, which is a type of "consumer statement," Archer was

---

[6] Defendants' explanation of "consumer statement" has evolved from a statement that Archer submitted about an unresolved dispute on her credit report, (Doc. 34-6 at 12-13; Doc. 22 at 21 n.6), to a fraud alert that Archer placed on her credit report and was unable to override because she could not verify her identity, (Doc. 34 at 18-21).

unable to do so. (*Id.*). Citigroup was, thus, "unable to comply with consumer statement" because Archer did not provide the telephone number needed to proceed. (*Id.* at 4-5).

Attached are Citigroup records as to Archer's application notating "TENDED FRAUD ALERT/VER ALERT/WAS NOT ABLE TO VER PHONE ON AL." (*Id.* at 8).

### b. Home Depot

As to the Home Depot letter, the declarant says that Citigroup "caused a letter to be mailed via first class U.S. Mail to Plaintiff at [her address]" on February 27, 2014. (Doc. 34-5 at 4). The declarant says that Citigroup has a "custom and practice to send such letters by first class mail, postage prepaid." (*Id.*).

### 3. Response and Discovery Motion

Archer asks the Court to defer ruling on the motion until she has had an opportunity to conduct more discovery. She says that the declarations are deficient as they do not detail how Citigroup's mailing process and policies work and which persons were involved in mailing the letters.

In support, Archer attaches a declaration in which she says that she did not receive the letter from Sears or Home Depot, (Doc. 37-1).

In the "Motion to Permit Discovery" under Rule 56(d), (Doc. 38), Archer says that more discovery is needed to elucidate whether the letters were actually sent and, if they were, to rebut any presumption that the letters were received. Archer states as follows that additional discovery is needed concerning:

- Business practices of Defendants with respect to credit applications
- Procedures used to process credit applications
- Custom and practices of Defendants with respect to mailing adverse action notices (where they are mailed from and how they are mailed)
- Systems used to mail adverse action notices

7

Defendants respond that Archer made no effort to conduct discovery in the 3 months following the denial of the motion to dismiss. Defendants say Archer offers nothing to excuse her failure, and has not identified any specific piece of discoverable evidence that would rebut defendants' showing that letters were in fact mailed to her.

### E.     Relevant Law

After receiving a completed credit application, a creditor must notify the applicant within 30 days of any "adverse action" with respect to the application. 15 U.S.C. § 1691(d)(1). Adverse action includes the denial of credit. *Id.* § 1691(d)(6). When adverse action is taken, the applicant is entitled to a written "statement of reasons" from the creditor containing "specific reasons" to support the decision. *Id.* § 1691(d)(2)-(3).

The ECOA permits an "aggrieved applicant" for credit to recover against a creditor "who fails to comply with any requirement" of the ECOA. *Id.* § 1691e(a). Damages are limited to "any actual damages sustained by such applicant." *Id.*

Implementing regulations of the ECOA provide:

> The statement of reasons . . . must be specific and indicate the principal reason(s) for the adverse action. Statements that the adverse action was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient.

12 C.F.R. § 202.9(b)(2). Additionally,

> A creditor need not describe how or why a factor adversely affected an applicant. For example, the notice may say "length of residence" rather than "too short a period of residence." . . .
>
> For example, if the applicant's credit history reveals delinquent credit obligations and the application is denied for that reason, to satisfy § 202.9(b)(2) the creditor must disclose that the application was denied because of the applicant's delinquent credit obligations.

12 C.F.R. Pt. 202, Supp. I.

A defendant may establish mailing with "proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance." *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1324 (6th Cir. 1972).

"Under the common law mailbox rule, the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Aetna Life Ins. Co. v. Montgomery*, 286 F. Supp. 2d 832, 839 (E.D. Mich. 2003) (citations omitted). "If the sender shows enough evidence to raise the presumption, then the other party bears the burden of showing that the document never arrived." *Id.* (citation omitted). "Merely stating that the document is not in the addressee's files or records . . . is insufficient to defeat the presumption of receipt." *Id.* (citation omitted).

### F.  Analysis

#### 1.  Mailing and Receipt of Letters

With respect to Archer's receipt of the letters, defendants are entitled to a presumption that the letters were received. The declarations from two different employees at Citigroup, the party who sent the letters, confirm that the letters were mailed to Archer at her home address by first class U.S. mail, postage prepaid. The declarants indicate this is based on personal knowledge and/or review of the relevant business records. This is sufficient evidence of proper and timely mailing.

Archer has not rebutted the presumption of receipt by mailing. Specifically, she offers only a declaration stating that she did not receive either letter in the mail. This bald statement falls short of *proving* the letters never *arrived*, and does not explain how or why the letters did not reach Archer when mailed to her address. Notably, Archer

9

*has* acknowledged receipt of a letter pertaining to the Home Depot card that was sent to her by Citigroup via the same mailing system.

### 2. Content of Sears Notice

At first glance, the meaning of "Unable to comply with consumer statement" may not be apparent. In context, however, this statement by Citigroup of the reason for the denial of credit was specific enough to meet the ECOA's notice requirements.

The "consumer statement" referenced in the letter refers to an extended fraud alert that Archer placed on her credit report. When Archer was asked at Sears to verify the telephone number listed on the fraud alert, she was unable to do so. Because Archer was unable to confirm her identity in this manner, credit was denied.

The letter stated that the decision was based on Archer's credit report and told her how to obtain a free copy. Citigroup was not required to "describe how or why" it was denying credit, only to state the factor that was the basis for the decision.

Given that Archer was the one who placed the fraud alert on her credit report in the first place and who was asked to verify her telephone number at the store, the statement "Unable to comply with consumer statement," combined with the disclaimer that the decision was based on Archer's credit report, was enough to put Archer on notice of the reason for credit denial. Specifically, Archer did not give the information needed to comply with a "consumer statement" she had placed on her credit report.

### 3. Discovery

Archer seeks more time for discovery so she may respond to defendants' proof of mailing. However, Archer has been given ample opportunity for discovery as to mailing and content of the letters. This included a 3-month period following the Court's

previous denial of the motion to dismiss.  Archer does not give any reason to excuse her failure to conduct discovery during the time allowed, nor does she point to any evidence that would rebut the presumption she received the letters mailed to her.

    SO ORDERED.

                              <u>S/Avern Cohn</u>
                              AVERN COHN
                              UNITED STATES DISTRICT JUDGE

Dated:  January 30, 2017
       Detroit, Michigan